## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| **MYTHRI CONSULTING, LLC**<br>8668, John Hickman Parkway Ste. 402<br>Frisco, Texas 75034<br><br>    Plaintiff,<br><br>    v.<br><br>**U.S. CITIZENSHIP AND**<br>**IMMIGRATION SERVICES**,<br>5900 Capital Gateway Drive<br>Mail Stop 2120<br>Camp Springs, MD 20588<br><br>**UR MENDOZA JADDOU,  DIRECTOR**,<br>**U.S. Citizenship and Immigration Services**<br>5900 Capital Gateway Drive<br>Camp Springs, MD 20588<br><br>**DONNA P. CAMPAGNOLO, DIRECTOR**<br>**OF CALIFORNIA SERVICE CENTER,**<br>U.S. Citizenship and Immigration Services<br>24000 Avila Rd.<br>Laguna Niguel, CA 92677<br><br>    Defendants. | Civil No.: |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW, Mythri Consulting, LLC ("Plaintiff") an advanced software development and consulting business based in Frisco, Texas who filed a Form-129 Petition for a Nonimmigrant Worker ("I-129"), on behalf of Pavan Kalyan Kuppa ("Kuppa" or "Beneficiary"), the beneficiary. On January 6, 2022, Defendants United States Citizenship and Immigration Services ("USCIS"), Ur Mendoza Jaddou ("Jaddou"), Director of U.S. Citizenship and Immigration Services, and Donna P. Campagnolo ("Campagnolo"), Director of California Service Center for U.S. Citizenship and Immigration Services (collectively, the "Defendants"), improperly denied Plaintiff's I-129.

Plaintiff files this civil action seeking review of Defendants' denial of Plaintiff's I-129 and respectfully requests that this Court reverse the arbitrary and capricious denial of Plaintiff's I-129.

## JURISDICTION

1.      This case arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court has authority to grant relief under the APA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

2.      Pursuant to 5 U.S.C. § 702, Defendants have waived sovereign immunity over any claim that an agency, or an officer or employee of an agency, acted, or failed to act, in an official capacity and for which a person has suffered a legal wrong.

3.      Plaintiff may seek judicial review upon denial of their visa petition without any further administrative appeal. See *EG Enterprises, Inc. v. Dept. of Homeland Sec.*, 467 F. Supp. 2d 728, 733 (E.D. Mich. 2006) (exercising jurisdiction upon finding plaintiff was not required to appeal the denial of its H-1B visa petition to the Administrative Appeals Office prior to filing suit; noting USCIS concurrence); *Young v. Reno*, 114 F.3d 879 (9th Cir. 1997) (Petitioner was not required to appeal her visa revocation to the Board of Immigration Appeals prior to seeking review in district court).

## VENUE

4.      Venue in this district is proper under 28 U.S.C. § 1391(e)(1) Plaintiff's principal place of business is in Frisco, Texas, which lies within the jurisdiction of this Court. Further, a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Eastern District of Texas.

## PARTIES

5.      Plaintiff Mythri Consulting, LLC is an advanced software development and consulting business based in Frisco, Texas.

6.      Defendant USCIS is the agency within the Department of Homeland Security ("DHS"), which is responsible for adjudicating immigration benefits, including H-1B petitions. USCIS is the agency that denied Plaintiff's H-1B petition, which is the subject of this Complaint.

7.      Defendant Ur Mendoza Jaddou is sued in her official capacity as, at the time this Complaint is filed, the Director of USCIS. In this position Ms. Renaud is responsible for overseeing the adjudication of immigration benefits and establishing and implementing governing policies. Ms. Renaud also has the responsibility of adjudicating H-1B petitions, such as the one that is the subject of this Complaint.

8.      Defendant Donna P. Campagnolo is sued in her official capacity as Director of U.S. Citizenship and Immigration Services California Service Center. Ms. Campagnolo is the officer who denied Plaintiff's H-1B petition.

## LEGAL BACKGROUND

9.      Pursuant to the INA, a United States employer may sponsor a qualified foreign national to temporarily enter the United States to "perform services . . . in a specialty occupation." INA §§ 101(a)(15)(H)(i)(b), 214(i); 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(c).

10.     Congress has defined "specialty occupation" as an occupation that requires: (a) theoretical and practical application of a body of highly specialized knowledge, and (b) the attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States. *See* 8 U.S.C. §1184(i).

11.     In addition to establishing that the proffered position is a "specialty occupation" as defined above, a petitioner must also satisfy **one** of the four regulatory tests set forth in 8 CFR, section 214.2(h)(4)(iii)(A) [emphasis added]. At the time USCIS denied Plaintiff's I-129, the four regulatory tests were as follows:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

*See* 8 CFR, section 214.2(h)(4)(iii)(A).

12.     In a proceeding, such as the one that makes the basis of this Complaint, a petitioner bears the burden of establishing eligibility for the benefits sought. See *Matter of Brantigan,* 11 I&N Dec. 493 (B.I.A. 1966).

13.     The petitioner must demonstrate, by a preponderance of the evidence that the position it seeks to fill is a "specialty occupation" as defined by 8 U.S.C. §1184(i), 8 CFR, § 214.2(h)(4)(ii) and 8 CFR, section 214.2(h)(4)(iii)(A).

14.     Here, Defendants improperly denied Plaintiff's I-129 holding that Plaintiff failed meet the criteria set forth in INA § 214(i)(l), 8 CFR, § 214.2(h)(4)(ii), as well as satisfy any of the four requirements set forth above and outlined in 8 CFR, § 214.2(h)(4)(iii)(A).

15.     A final agency action, such as the denial in the present matter, will only be set aside if it was "arbitrary, capricious, an abuse of discretion and not in accordance with the law." *See* 5 U.S. Code § 706(2)(A).

16.     Plaintiff requests this Court hold Defendants' denial of Plaintiff's I-129 unlawful because the denial was arbitrary and capricious. *See* 5 U.S. Code § 706(2)(A).

## FACTUAL BACKGROUND

17.     On or about June 21, 2021, Plaintiff filed a Form I-129, Petition for a Nonimmigrant Worker, to classify beneficiary Kuppa as a temporary worker in H-1B status for the specialty occupation of Software Developer. A true and correct copy of the Form I-129 Petition is attached hereto as Exhibit "A" and is incorporated herein by reference.

18.     Defendant USCIS issued a receipt notice for Petitioner's Form I-129 on June 25, 2021. A true and correct copy of the receipt noticed is attached hereto as Exhibit "B" and is incorporated herein by reference.

19.     Plaintiff sought to employ beneficiary for a three-year term position as a Software Developer, with an annual salary of $90,022. Exhibit "A".

20.     Beneficiary is more than qualified for the position of a Software Developer, with Plaintiff. Beneficiary not only holds a Bachelor of Science in Computer Science from Jawaharlal Nehru Technological University – Hyderabad, but also possesses a plethora of relevant work experience in the IT Industry. Specifically, beneficiary Kuppa previously worked for ACS Solutions, initially as a Software Engineer, and later, after a promotion in 2021, as a Senior

Software Engineer.  Beneficiary Kuppa worked for ACS Solutions, and its end clients for over five (5) years. *See* Exhibit "A".

21.     In support of its I-129 petition, Plaintiff supplied the following (non-exhaustive list) of relevant documentation: (1) Labor Condition Application ("LCA") (I-200-21160-380945) for the position of Software Developer, a specialty occupation of Software Developers, Applications, which was certified by the Department of Labor ("DOL") for the period of October 1, 2021 through September 30, 2024; (2) evidence of beneficiary's prior work experience as a Software Engineer; (3) evidence of beneficiary's educational background, as well as an evaluation, performed by a reliable credentials evaluation service, of the beneficiary's foreign educational credentials; (4) offer letter, with an enclosed employment agreement between Plaintiff and beneficiary, detailing the job duties, as well as the percentages of time for each duty, technical skills required, and compensation rate; (5) verification of employment relationship; and (6) complete itinerary of beneficiary's services. *See* Exhibit "A".

22.     On October 1, 2021, Defendant USCIS issued a Request for Evidence ("RFE"), alleging that Plaintiff failed to submit sufficient evidence to show that the position offered to beneficiary qualified as a "specialty occupation" as defined by both 8 U.S.C. §1184(i), 8 CFR, § 214.2(h)(4)(ii), and 8 CFR, section 214.2(h)(4)(iii)(A). A true and correct copy of the RFE is attached hereto as Exhibit "C" and is incorporated herein by reference.

23.     In the RFE, Defendant USCIS stated the Plaintiff failed to establish that the proffered position of Software Developer qualified as a "specialty occupation", as defined by both 8 U.S.C. §1184(i), 8 CFR, § 214.2(h)(4)(ii) and 8 CFR, § 214.2(h)(4)(iii)(A), because the "description of duties" Plaintiff provided were "vague and generalized." Specifically, Defendants held that the position of Software Developer is not a specialty occupation because "these vague

and generalized duties do not require a bachelor's degree or higher or its equivalent in a specific specialty to perform them." *See* <u>Exhibit "C"</u>.  Defendant USCIS failed to provide any further explanation as to why Plaintiff did not satisfy any of the four requirements under 8 CFR, section 214.2(h)(4)(iii)(A), nor meet the criteria of "specialty occupation" as set forth in 8 U.S.C. §1184(i) and 8 CFR, § 214.2(h)(4)(ii).   Defendants provided Plaintiff with a non-exhaustive list of additional evidence it may submit to satisfy "this" requirement. It should be noted that many of the forms of additional evidence suggested by Defendants, was evidence that Plaintiff had already submitted with its original I-129 petition. It is clear Defendants either wholly failed to take notice of and/or completely disregarded the laundry list of documentation Plaintiff submitted with its I-129 petition as outlined above. *See* <u>Exhibit "C"</u>.

24.    The RFE offered Plaintiff the opportunity to submit additional evidence showing that the position of Software Developer was a "specialty occupation" pursuant to 8 U.S.C. §1184(i), 8 CFR, § 214.2(h)(4)(ii) and 8 CFR, §214.2(h)(4)(iii)(A).

25.    Plaintiff timely responded to the RFE. In the response, Plaintiff included significant supplemental evidence showing that the position of Software Developer qualifies as a "specialty occupation." In addition to the supplemental evidence, Plaintiff also included evidence already in the record, since Defendants failed to take notice of and/or completely disregarded the initial evidence Plaintiff submitted with its I-129 petition. The supplemental evidence included, but is not limited to, the following: an excerpt from the Department of Labor's Occupational Outlook Handbook ("OOH"); a mapping of the job duties, which included not only a description of the job duties and responsibilities, but the skills required to fulfill those job duties and responsibilities, as well as the educational credentials required to fulfill each job duty and responsibility; and an article by the Association for Computing Machinery and IEEE Computer Society, which outlines the

curriculum guidelines for undergraduate degree programs in Computer Science that were established in **direct response** to the demands of employment for someone like a Software Developer . The initial evidence Plaintiff submitted with the Form I-129 and the supplemental evidence submitted in response to the RFE was more than sufficient to establish that the proffered position of Software Developer is a "specialty occupation" as defined by 8 U.S.C. §1184(i), 8 CFR, § 214.2(h)(4)(ii) and under all four regulatory tests set forth in 8 CFR, section 214.2(h)(4)(iii)(A). A true and correct copy of the Response to RFE is attached hereto as Exhibit "D" and is incorporated herein by reference.

26.     On January 6, 2022, Defendant USCIS issued a decision denying the Plaintiff's I-129 (the "Denial"). A true and correct copy of the Denial is attached hereto as Exhibit "E" and is incorporated herein by reference.

27.     Defendant USCIS unreasonably denied Plaintiff's petition holding that Plaintiff did not meet the criteria enumerated in 8 U.S.C. §1184(i), 8 CFR, § 214.2(h)(4)(ii) and 8 CFR, section 214.2(h)(4)(iii)(A). Plaintiff provided substantial evidence that demonstrated the relevant position satisfied the definition of "specialty occupation," as outlined in 8 U.S.C. §1184(i) and 8 CFR, § 214.2(h)(4)(ii), as well as each of the four requirements set forth in 8 CFR, § 214.2(h)(4)(iii)(A). Defendant USCIS not only failed to properly apply the criteria set forth in 8 U.S.C. §1184(i), 8 CFR, § 214.2(h)(4)(ii), and 8 CFR, § 214.2(h)(4)(iii)(A), but also failed to provide any logical and/or reasonable explanation as to **why** Plaintiff failed to satisfy each requirement. Rather, Defendant USCIS provided Plaintiff with a plethora of overbroad explanations, loaded with blanket statements, that provided no basis in law or fact as to what Plaintiff could have provided to satisfy the relevant requirements, or why the substantial evidence Plaintiff did proffer was not sufficient. Lastly, and perhaps the most disconcerting, **Defendants based its denial on evidence**

*not in the record*. Meaning, Defendants not only failed to take into consideration the plethora of evidence Plaintiff *did* submit, but Defendants, without any authority in the law or within agency policy, collected evidence on its own accord, and based their denial on said evidence. This is unprecedented, holds no authority within the bounds of the law, and violates Defendant USCIS's own policies.

### STATEMENT OF CLAIMS

**Count One: APA–the Denial is Arbitrary and Capricious**

28.     Plaintiff re-alleges and incorporates by reference herein all of the allegations set forth above.

29.     The APA empowers this Court to set aside a final agency action where, as in the present matter, the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §706(2)(A). Under this standard, the court may reverse an agency decision if:

> The agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983.).

30.     USCIS' decision must reflect that it "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action." *Noroozi v. Napolitano*, No. 14 cv 2012 (PAE), 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012), citing *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000).

31.     Defendants wholly failed to discuss or otherwise demonstrate that they considered the abundance of evidence submitted by Plaintiff. In fact, in the RFE sent by Defendants to

Plaintiff, it is abundantly clear that Defendants completely failed to consider a bulk of the initial substantive evidence submitted with Plaintiff's I-129 petition. Further, Defendants failed to provide sufficient justification for their denial of Plaintiff's petition, instead Defendants provided overbroad, and frankly just confusing, explanations that offered little, if any, insight on to how Defendants came to the conclusions they did.

32.    As described herein Plaintiff satisfied criteria enumerated in 8 U.S.C. §1184(i) and 8 CFR, § 214.2(h)(4)(ii), as well as all four of the requisite criteria set forth in 8 CFR, § 214.2(h)(4)(iii)(A). Defendants' denial is indisputably arbitrary and capricious, as the denial runs counter to the evidence in the record and must be reversed.

**A.    Plaintiff Satisfied the Criteria Set Forth in both the Statute and Regulations**

33.    As stated above, for a proffered position to be considered a "specialty occupation", under 8 U.S.C. §1184(i), the petitioner must establish that the position requires: (a) theoretical and practical application of a body of highly specialized knowledge, and (b) the attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States. *See* 8 U.S.C. §1184(i). In line with statutory definition of "specialty occupation", outlined above, 8 CFR, § 214.2(h)(4)(ii) further defines "specialty occupation", as:

> …an occupation which requires the theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

*See* 8 CFR, § 214.2(h)(4)(ii).

34.     In regard to the regulations set forth in 8 CFR, § 214.2(h)(4)(iii)(A), it has been well established that the four (4) criteria are necessary, but not sufficient, to establish that a position is a "specialty occupation." *See RELX, Inc. v. Baran*, 397 F. Supp. 3d 41, 53 (D.D.C. 2019). Therefore, and as Defendants noted in their Denial, in order to read the above statute and regulations together, USCIS interprets the term "degree" in 8 CFR, § 214.2(h)(4)(iii)(A) to mean not just any degree, but one in a specific specialty that is directly related to the preferred position, as required under 8 U.S.C. §1184(i) and 8 CFR, § 214.2(h)(4)(ii).  *Id.*

35.      As outlined below, Plaintiff provided substantial evidence that demonstrated the relevant position satisfied criteria enumerated in 8 U.S.C. §1184(i) and 8 CFR, § 214.2(h)(4)(ii), as well as all four of the requisite criteria set forth in 8 CFR, § 214.2(h)(4)(iii)(A).

### *i. Criterion 1: Bachelor's Degree is Normally the Requirement*

36.     In order to satisfy the first criterion, outlined in 8 CFR § 214.2(h)(4)(iii)(A)(1), a petitioner must demonstrate that "a baccalaureate or higher degree, or its equivalent, in a specific specialty, is normally the requirement for entry into the particular position." Defendants concluded that Plaintiff failed to meet this criterion.

37.     In support of the first criterion, Plaintiff submitted a certified LCA, which listed an Occupation Title of Software Developer. Plaintiff referenced information regarding the training and educational requirements for Software Developers/Applications position it found in the OOH. Specifically, Plaintiff referenced that the OOH states that Software Developers "usually have a bachelor's degree in computer science, or a related field."

38.     Defendants recognized that the OOH states that the position of Software Developer usually requires a bachelor's degree in computer science, or a related field. However, Defendants, relying on 8 CFR § 214.2(h)(4)(i)(B)(2), stated "[w]hether the DOL or another source indicates

that the occupation category certified on LCA is a specialty occupation does not mean that the present position you offered to the beneficiary is a specialty occupation." *See* 8 CFR § 214.2(h)(4)(i)(B)(2) ("certification by the Department of Labor of a labor condition application in an occupation classification does not constitute a determination by that agency that the occupation in question is a specialty occupation."). Defendants' application of 8 CFR § 214.2(h)(4)(i)(B)(2) is wholly misguided, and contrary to Defendant USCIS's own regulatory practices.

39.     USCIS not only routinely relies on the DOL's OOH to determine whether a proffered position satisfies the requirements of a "specialty occupation," but USCIS has openly recognized the OOH as "an ***authoritative source*** on the duties and education requirements of the wide variety of occupations that it addresses." *See Taylor Made Software, Inc. v. Cuccinelli*, 453 F. Supp. 3d 237, 244 (D.D.C. 2020) (emphasis added). Moreover, the courts have consistently held that "[r]eliance on the Occupational Handbook is reasonable in determining whether a proposed position satisfies the requirements of a "specialty occupation." *See Blacher v. Ridge*, 436 F. Supp. 2d 602, 609 (S.D.N.Y. 2006). For Example, in *Next Generation Tech., Inc. v. Johnson*, the question was whether the position of computer programmer, normally required a bachelor's degree. *See Next Generation Tech., Inc. v. Johnson*, 328 F. Supp. 3d 252, 267 (S.D.N.Y. 2017). The OOH stated that "some employers hire workers with an associates degree, but most computer programmers have a bachelor's degree in computer science or a related subject." *Id*. The Court in *Next Generation* held that based on that language, "the Occupational Handbook arguably demonstrates that a bachelor's degree or higher in a specific specialty is 'normally the minimum requirement for entry into the position.' *Id*. at 268.

40.     Therefore, and though the OOH may not be determinative of whether a proffered position qualifies as a "specialty occupation", it is clear that the OOH is determinative of whether

a proffered position satisfies the first criterion set forth in 8 CFR § 214.2(h)(4)(iii)(A)(1). In the present matter, Plaintiff submitted a certified LCA, which listed an Occupation Title of Software Developer. Here, the OOH states that Software Developers "typically need a bachelor's degree in computer and information technology or a related field, such as engineering or mathematics", and goes on to state "[f]or some software developer positions, employers may prefer that applicants have a master's degree." Clearly, the proffered position of "Software Developer" normally requires a minimum of a bachelor's degree, or higher, in a specific specialty, for entry into the position. Accordingly, Plaintiff satisfied the first criterion set forth in 8 CFR § 214.2(h)(4)(iii)(A)(1).

### i. Criterion 2: Common to the Industry

41.    The second criterion presents two alternative prongs, wherein Plaintiff may satisfy either prong to satisfy the second criterion. In the present matter, Plaintiff satisfied both prongs of the second criterion. Plaintiff will analyze the first prong herein, and the second prong will be discussed later in this Complaint.

42.    The first prong requires a Petitioner to establish that "the degree requirement of a bachelor's degree or higher in a specific specialty, or its equivalent, is common to the industry in parallel positions among similar organizations." *See* 8 CFR, §214.2(h)(4)(iii)(A)(2).

43.    The nature of IT or any computing field, such as Software Development, requires that an entry level worker have a bachelor's degree. The degree programs in Computer Science, Electronics Engineering, Computer Information Systems, and related fields prepare students to create computer programs and systems, develop new business and technology processes, and address technical issues in a wide range of industries. The skills which enable those in the field of Computer Science, Electrical and Electronics Engineering, Computer Information Systems, and

related fields to perform their job duties are taught in the final years of bachelor's degree programs in Computer Science, Electrical and Electronics Engineering, Computer Information Systems, and related fields. The position of Software Developer relies heavily upon the beneficiary's ability to apply theoretical methodologies and applications to their pragmatic use in an industry context, and thus is a position that requires training at the bachelor's level, in a specific degree such as Computer Science, Electrical and Electronics Engineering, Computer Information Systems, and related fields.

44.     This is corroborated by the OOH, which states that "developers must have a strong background in computer programming", and goes on to say, "they usually gain this experience in school." Additionally, in its RFE response, Plaintiff referenced an article published by the Association for Computing Machinery and IEEE Computer Society, an industry-related professional association, which talked about how the general curricular requirements for bachelor's programs of study in computing fields have been established in direct response to the demands of the employment for someone like a Software Developer. *See* https://www.acm.org/binaries/content/assets/education/cs2013_web_final.pdf.

45.     Taking all of the above into consideration, it is abundantly clear that the position of Software Developer commonly requires the minimum of a bachelor's degree in Computer Science, Electrical and Electronics Engineering, Computer Information Systems, and related fields, or it's equivalent. The position of a Software Developer requires specials skills that can only be obtained through a bachelor's degree one of those specified fields above, and therefore, Plaintiff has satisfied the first prong of the second criteria, set forth in 8 CFR, §214.2(h)(4)(iii)(A)(2).

### iii.  Criterion 3: Plaintiff Normally Requires a Degree or its Equivalent

46.    The third criterion requires the petitioner/employer to establish that it normally requires a degree or its equivalent for the proffered position. *See* 8 CFR, §214.2(h)(4)(iii)(A)(3).

47.    The RFE, sent by Defendants, included a list of suggested evidence that Plaintiff could submit to satisfy the third criterion. Defendants stated that the following evidence could be used to satisfy the third criteria: (1) copies of your present and past job postings or announcements for the proffered position showing that you require applicants to have a minimum of a bachelor's or higher degree in a specific specialty or its equivalent; and/or (2) documentary evidence of your past employment practices for the position, including: copies of employment or pay records, and copies of degrees or transcripts to verify the level of education of each individual and the field of study for which the degree was earned.

48.    Plaintiff submitted the evidence Defendants suggested of past employment practices for the position, to satisfy the third criteria. Specifically, Plaintiff provided nineteen (19) H-1B approval notices that Plaintiff obtained, for the same position of Software Developer. Plaintiff also provided each of the nineteen (19) beneficiary's educational credentials, all who had at least a bachelor's degree in computer engineering or the equivalent, as well as their pay records from their employment with Plaintiff. This is ***exactly*** what Defendants suggested Plaintiff submit to satisfy third criteria, in the RFE.

49.    Additionally, Plaintiff included the following paragraph in its I-129 cover letter, submitted with its original petition:

**THE POSITION QUALIFES AS A SPECIALTY OCCUPATION**

This position in our company is professional in nature, as the position requires the individual to be involved in Software Development life cycle, Design and development of applications, testing, and using computer databases, tailored to unique requirements. The required background can only be obtained through one of several limited means, which include a Bachelor's degree or its equivalent in Computer Science, Computer Information Systems, Software Engineering,

Engineering Management, Computer or Electronics Engineering, Computer Applications or a very closely related field. *We have never placed an individual in the above position who holds less than a Bachelor's degree in one of the above disciplines, or its strict equivalent.* This is a position within our company, and a role within our industry, that requires a minimum of a Bachelor's degree in a specific field of study for entry into the field.

> *See* <u>Exhibit "A"</u> (emphasis added).

It is important to note here that each petition is signed by the petitioner "under penalty of perjury." Specifically, the language of the attestation on the Form I-129 that USCIS *requires* petitioners, like Plaintiff in the present matter, to sign reads as follows: "I certify, under the penalty of perjury, that I have reviewed this petition and that *all of the information contained in the petition, including all responses to specific questions, and in the supporting documents, is complete, true, and correct*." *See* <u>Exhibit "A"</u> (emphasis added).

50.     Nonetheless, and despite the fact Plaintiff submitted the exact evidence suggested by Defendants to satisfy the third criteria, Defendants stated the following:

> The documents you provided indicate that the workers have computer-related degrees. However, simply providing the workers' degree does not show that you actually required such degrees prior to hiring the workers. Stated another way, the workers' degrees do not show your requirements for the present position or that you normally required such degrees before hiring the workers. The degrees simply show that the workers had certain education without showing your requirements for the position.

> *See* <u>Exhibit "E"</u>.

51.     Defendants grossly misapplied the evidence to the regulations. The evidence Plaintiff submitted of its past employment practices, coupled with their statement, made under penalty of perjury, that they have *never* hired an individual for the position of Software Developer, who holds less than a bachelor's degree in Computer Science, Computer Information Systems, Software Engineering, Engineering Management, Computer or Electronics Engineering,

Computer Applications or a very closely related field, is more than sufficient to show that Plaintiff normally requires a degree or its equivalent for the proffered position.

52.     Nonetheless, and perhaps the most egregious, Defendants not only discounted the evidence Plaintiff *did* submit, to satisfy the third criteria, but Defendants relied on evidence outside of the record, and made conclusions on said evidence. Specifically, Defendants went to Plaintiff's website and reviewed their job postings. On Plaintiff's website, it found a job posting for the position of Software Developer. This job posting stated that the position of Software Developer required a "Masters in Computer Science, Engineering (any field), or related." Based on this job posting, Defendants made the following conclusion:

> …a minimum entry requirement of a bachelor's degree in disparate fields of study, such as any engineering field, would not meet the requirement that the position requires the theoretical and practical application of a body of highly specialized knowledge and attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, unless you establish how each field is directly related to the duties and responsibilities of the particular position.

> See Exhibit "E".

53.     First, it should be noted that the job posting did not speak to Plaintiff's requirement on what specific bachelor's degree is required to be considered for the position of Software Developer, the job posting only mentioned what fields are appropriate for a master's degree.

54.     Second, such a conclusion runs contrary to the well-established precedent on this matter. The Court has held that "there is no requirement in the statute that only one type of degree be accepted for a position to be specialized…nowhere in the statute does it require the degree to come solely from one particular academic discipline." *See Taylor Made Software, Inc. v. Cuccinelli*, 453 F. Supp. 3d 237, 243 (D.D.C. 2020), quoting *RELX, Inc. v. Baran*, 397 F. Supp. 3d 41, 54-55 (D.D.C. 2019). Rather, the statute and regulations merely require that "an occupation

require highly specialized knowledge and a prospective employee who has attained the credentialing indicating the possession of that knowledge." *See RELX, Inc.* 397 F. Supp. 3d at 55.

55.     Based on Plaintiff's past employment practices, Plaintiff clearly only considers prospective employees who have, at the very minimum, obtained at least a bachelor's degree in Computer Science, Computer Information Systems, Software Engineering, Engineering Management, Computer or Electronics Engineering, Computer Applications or a very closely related field. Based on the job posting on Plaintiff's website, they sometimes require even more than just a bachelor's degree, and go as far as to require a master's in computer science, Engineering (any field), or related. The fact Plaintiff may sometimes require more than a bachelor's degree in a specific field, does not discount the fact that it does indeed require, at the minimum, a bachelor's degree in Computer Science, Computer Information Systems, Software Engineering, Engineering Management, Computer or Electronics Engineering, Computer Applications or a very closely related field.

56.     Lastly, and most importantly, it should be noted that Defendants had no authority within the law or within agency policy, to rely on evidence outside of the record. In regard to an officer performing additional research, the USCIS Policy Manual states the following, "although the burden of proof to establish eligibility for an immigration benefit is on the benefit requestor, an officer may assess, ***before issuing an RFE or a NOID***, whether the information or evidence needed is available in USCIS records or systems." (emphasis added). Here, the adjudicating officer not only used evidence outside of USCIS records or systems, but assessed said evidence ***after*** issuing the RFE. Even when such "additional research" is authorized, it is severely limited in scope. Specifically, the Policy Manual states "officers have discretion to validate assertions or corroborate evidence and information by reviewing USCIS (or other governmental) files, systems,

and databases, or by obtaining publicly available information that is readily accessible." The Policy Manual goes on to give the following example of when an officer is permitted to exercise such authority:

> For example, an officer may, in the exercise of discretion, verify information relating to a petitioner's corporate structure by *consulting a publicly available government website* or corroborate evidence relating to a person's history of nonimmigrant stays in the United States by searching a *U.S. government database*.

*See* USCIS Policy Manual, Volume 1, Part E, Chapter 6 (emphasis added).

Plaintiff's website is not a government website. The Defendants in the present matter acted outside of their respective authority when they not only collected evidence on their own accord but relied on said evidence in their Denial of Plaintiff's I-129 petition.

57.    Plaintiff in the present matter objectively satisfied the third criterion set forth in 8 CFR, §214.2(h)(4)(iii)(A)(3): that the employer normally requires a degree, or its equivalent, in a specific specialty for the position.

### iv.  Criterion 2 and 4: So Complex and Unique

58.    As stated above, the second criterion presents two alternative prongs, wherein Plaintiff may satisfy either prong to satisfy the second criterion. In the present matter, and again as stated above, Plaintiff satisfied both prongs. Plaintiff provided an analysis of the first prong above and will now move to show how Plaintiff satisfied the second prong and the fourth criterion set forth under 8 CFR, §214.2(h)(4)(iii)(A).  The second prong of the second criterion, requires the "employer [Plaintiff] show that its particular position is so complex or unique that it can be performed only by an individual with a degree." *See* 8 CFR, §214.2(h)(4)(iii)(A)(2). Further, the fourth criterion requires that "the nature of the specific duties is so specialized and complex that the knowledge required to perform the duties is usually associated with the attainment of a

baccalaureate degree or higher degree in a specific specialty." 8 CFR, §214.2(h)(4)(iii)(A)(4). The second prong of the second criterion and the fourth criterion under 8 CFR, §214.2(h)(4)(iii)(A) are similar and require a related analysis and substantiating evidence. For that reason, Plaintiff will analyze the two criteria together, providing any distinguishing analysis when necessary.

59.    As stated above, Defendants' decision must reflect that it "considered the pertinent evidence, examined the relevant factors, and ***articulated a satisfactory explanation for its action***." *Noroozi v. Napolitano*, No. 14 cv 2012 (PAE), 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012), citing *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000) (emphasis added); *See also*, *Iaccarino v. Duke*, 327 F.Supp.3d 163, 177 (D. D.C. 2018) ("In evaluating agency actions under the arbitrary and capricious standard, the court must be satisfied that the agency has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action…').

60.    In the same spirit, this Court has held that "when an agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] ***must*** undo its action." See *Iaccarino*, 327 F. Supp. 3d at 177 (emphasis added) (citing *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999)); *See also, Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014). Put more simply, the agency, in this case USCIS, must explain why it acted as it did. The Court has held that this requirement serves two purposes: (1) to ensure that the agency has given careful consideration to the relevant request; and (2) to give the party an opportunity to inform the agency of any errors it may have made and to facilitate judicial review. *Butte Cnty. v. Hogen*, 613 F.3d 190, 201 (D.C. Cir. 2010).

61.    To satisfy the second and fourth criterion, Plaintiff provided in a depth list of the job duties (nearly three (3) pages), which included not only a description of the job duties and

responsibilities, but the skills and educational credentials required to fulfill those job duties and responsibilities. *See* Exhibit "A" and Exhibit "C".

62.    Defendants concluded that the three-page document, which detailed exactly what each duty would entail and what skills are needed to sufficiently complete the respective duty/responsibility, was insufficient to satisfy the second or fourth regulatory test. However, Defendants failed to provide an appropriate explanation as to ***why*** the evidence submitted by Plaintiff was insufficient.

63.    Specifically, Defendants stated, "[t]he duties appear to require knowledge of certain computer technologies and computer programming skills. The duties do not show that a bachelor's degree or higher or its equivalent in a specific specialty is required to perform them." *See* Exhibit "E".

6.    Defendants' overbroad statements provide no material explanation as to why the detailed three-page position description that Plaintiff submitted was insufficient to satisfy either the second or fourth criteria. This Court has made it clear that while the explanation need not be anything more than a "brief statement," the statement must explain ***why*** the agency chose to do what it did. *See Tourus v. Drug Enforcement Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001) (the court held that the statement "Affidavit of Indigency you submitted in lieu of a cost bond is not adequately supported" was not sufficient to explain why the agency made the decision it did, as the statement was conclusory and lacked any reasoning.) Like the agency in *Tourus*, the Defendants in the present matter merely provided Plaintiff with "conclusory statements" as to why Plaintiff failed to satisfy the second and fourth criteria. As such, the Defendants' denial of Plaintiff's I-129 undoubtedly constitutes an arbitrary and capricious action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Court grants the following relief:

1. Accept jurisdiction over this action;

2. Reverse Defendants' decision and grant Plaintiff's Form I-129, Petition for a Nonimmigrant Worker;

3. Grant reasonable attorneys' fees and costs as provided under the Equal Access to Justice Act and the APA; and

4. Grant such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Sharadha Sankararaman Kodem*____
Sharadha Sankararaman Kodem
Texas Bar No. 24090370
Caitlin Rowe
Texas Bar No. 24124334
The Kodem Law Firm, PLLC
580 Decker Dr., Ste. 123
Irving, Texas 75062
Phone: 888-955-6634 ext. 101
Facsimile: 817-778-9980
Email: sharadha.kodem@kodemlaw.com
Email: caitlin.rowe@kodemlaw.com

Counsel for Plaintiff